Rufus HUFFMAN, individually and on behalf of all others similarly situated; Benjamin Jordan, individually and on behalf of all others similarly situated, Plaintiffs,

v.

BULLOCK COUNTY; Bullock County Commission, Defendants.

Civ. A. No. 81–630–N.

United States District Court,
M. D. Alabama, N. D.

Dec. 22, 1981.

Stephen J. Ellman, Dennis N. Balske, Montgomery, Ala., for plaintiffs.

Louis C. Rutland, Union Springs, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiffs Rufus Huffman, the probate judge of Bullock County, Alabama, and John H. Jackson and Benjamin Jordan, Bullock County citizens and voters, brought this action against defendants Bullock County and Bullock County Commission seeking the grant of preliminary and permanent injunctive relief and a declaratory judgment forbidding the enforcement against plaintiff Huffman of a requirement that he, as the probate judge of Bullock County, pay salaries of clerks in his office that previously have been paid by the Bullock County Commission.[1] Plaintiffs filed a motion for a preliminary injunction on November 13, 1981, and a hearing on plaintiffs' motion was held on December 14, 1981. Plaintiffs also filed a motion to dismiss John H. Jackson as a party plaintiff on December 11, 1981, and said motion was granted by the Court in an order entered December 16, 1981.

Plaintiffs argue that the newly imposed requirement that the probate judge of Bullock County pay salaries of persons in his office that heretofore have been paid by the Bullock County Commission constitutes a change in a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" covered by the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and that enforcement of this requirement without preclearance by the United States Department of Justice is a violation of the Voting Rights Act. In particular, plaintiffs contend that the new requirement concerning the payment of such salaries will prevent the bulk of the black population in Bullock County, as well as low and moderate income citizens of all races, from aspiring to hold the office of probate judge.

In their complaint plaintiffs aver that plaintiff Rufus Huffman is the first black to hold the office of probate judge in Bullock County. Plaintiffs state that for many years prior to plaintiff Huffman's assumption of office Alabama law, including sections 11–3–11 and 12–13–40 of the Alabama Code, were interpreted and applied so that the defendant Bullock County Commission paid the salaries of the probate judge's office staff. Alabama law is now being interpreted and applied in a different manner as a result of a lawsuit brought in Bullock County Circuit Court by private citizens. In an order entered October 21, 1981, the Bullock County Circuit Court held that the Bullock County Commission, which was a defendant in the state court action, was not authorized to pay the costs of the operations of the probate judge's office except for that portion of the probate judge's staff's time that is devoted to commission business, as opposed to time devoted to other duties of the probate office. The Circuit Court found the time of the staff devoted to commission business amounted to 40 per cent of the staff's time.

In their complaint plaintiffs state that the probate judge of Bullock County receives his income from fees generated by the probate office. The ruling of the Circuit Court will now require that 60 per cent of the salaries for the probate office staff be paid out of the fees generated by the probate office. Plaintiffs allege that the total fees collected by the probate judge's office amount to approximately $13,000 annually. It is unchallenged that the probate judge must employ at least two permanent staff persons to operate the office effectively and that the salaries and fringe benefits of the two permanent staff persons presently employed total $24,794 annually.

---

1. Plaintiffs also seek to have this suit certified as a class action brought on their own behalf and on behalf of the class of all black persons and all low and moderate income persons in Bullock County.

At the hearing on plaintiffs' motion for a preliminary injunction, this Court was advised that the Bullock County Commission has appealed the decision of the Circuit Court of Bullock County to the Alabama Supreme Court, and on that appeal expects to urge that all such staff costs be paid by the County Commission. But this Court is also advised that the County Commission has, as of the date of this order, ceased making full payments to the probate office staff. This action by the Commission is being taken because of the reasonable concern of the Commission members that if the appeal is unsuccessful, the members may be liable individually for past payments made to the probate office personnel.

Since the problem of paying for the effective operation of the probate office of Bullock County should have legislative rather than judicial input, this Court is reluctant to impose the status quo on the probate office of Bullock County. There may well be a more efficient method of operating the probate office. Perhaps the much criticized fee system for paying probate judges, which has been abandoned in many Alabama counties, should be changed in Bullock County. Perhaps the office could be more economically or more efficiently staffed. These are not questions for a court.

The question for this Court is whether plaintiffs are entitled to a preliminary injunction on the undisputed allegations of their petition. The Court must consider four prerequisites before plaintiffs are entitled to be granted a preliminary injunction. These are: (1) a substantial likelihood that plaintiffs will ultimately prevail on the merits; (2) a showing that plaintiffs will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to plaintiffs outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest. *Compact Van Equipment Co. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978).

*Likelihood Plaintiffs Will Prevail*

In considering the first prerequisite to the granting of a preliminary injunction, whether a substantial likelihood exists that plaintiffs will ultimately prevail on the merits, the Court receives guidance from the United States Supreme Court's opinion in *Dougherty County Bd. of Ed. v. White,* 439 U.S. 32, 99 S.Ct. 368, 58 L.Ed.2d 269 (1978). In that case a black teacher brought suit challenging the implementation of a newly enacted rule that required any board of education employee who becomes a candidate for elective public office to take a leave of absence, without pay, for the duration of the political activity and during the period of service in office if elected. The Supreme Court affirmed the district court's decision that the board of education rule should have been submitted to the Attorney General for approval before implementation. In so ruling, the Supreme Court pointed out that the district court should not undertake to determine whether the challenged action in fact has a discriminatory purpose or effect, but the district court is instead to confine its review to the preliminary issue whether the change has the "potential" for discrimination, and, therefore, is subject to the preclearance mechanism required by 42 U.S.C. Sec. 1973c. 439 U.S. at 36, 99 S.Ct. at 371. In *White* the Supreme Court noted that the phrase "standard, practice, or procedure" found in Section 1973c must be given the "broadest possible scope." *Id.* at 38, 99 S.Ct. at 372. Additionally, the Court stressed that the Attorney General's regulations concerning the Voting Rights Act "require preclearance of '[a]ny alteration affecting the eligibility of persons to become or remain candidates or obtain a position on the ballot in primary or general elections *or to become or remain officeholders.*'" *Id.* at 39, 99 S.Ct. at 372 (quoting 28 C.F.R. § 51.4(a) (1977)) (emphasis added). In regard to the rule adopted by the board of education in *White* requiring all employees who seek elective office to take a leave of absence, without pay, the Supreme Court stated:

By imposing substantial economic disincentives on employees who wish to seek elective office, the Rule burdens entry into elective campaigns and, concomitantly, limits the choices available to Dougherty County voters. Given the potential loss of thousands of dollars by employees subject to Rule 58, the Board's policy could operate as a more substantial inhibition on entry into the elective process than many of the filing fee changes involving only hundreds of dollars to which the Attorney General has successfully interposed objections. *Id.* at 40, 99 S.Ct. at 373.

It is clear that the change requiring the Probate Judge of Bullock County to pay 60 per cent of the salaries of the persons employed in the probate office will have a far more "substantial inhibition" than the change in practice in Dougherty County. There could hardly be a more "substantial economic disincentive" than a change which alters annual income for the probate judge from approximately $13,000 annually to an annual loss.

Based on the expansive construction of Section 1973c mandated by *White*, there is a substantial likelihood that at a final hearing this Court would find that the change requiring the probate judge of Bullock County to pay personnel costs of his office has a "potential" for discrimination and, accordingly, must be submitted to the Attorney General for preclearance before further implementation. In so holding, the Court makes no attempt to determine the proper interpretation of Alabama law regarding personnel costs incurred by the probate judge of Bullock County and paid by the Bullock County Commission. Rather, the Court specifically limits its inquiry to whether the new requirement that the probate judge of Bullock County pay personnel costs of his office that have been previously paid by the Bullock County Commission is different from the policy in effect in 1964 when Bullock County became subject to the Voting Rights Act, and, if so, whether such change must be submitted to the Attorney General.

In *United States v. Clarke County Comm'n*, C.A. No. 80–0547–P (S.D.Ala. 1980), a three judge court was confronted with the argument that the change in the method of electing county commissioners in Clarke County was not implemented pursuant to a newly enacted statute. The Clarke County Commission argued that the change had been mandated by an 1878 statute, which admittedly had not been followed for many years in Clarke County. The three judge court held that it was irrelevant whether the "change" was brought about because of a different construction of an old statute or the enactment of a new statute. In either case there was such a change in the method of selecting commissioners that approval of the Attorney General was required. So in the instant case, even though the decision of the Bullock County Circuit Court purported to do no more than construe an act which was in effect prior to the enactment of the Voting Rights Act, the construction of that act brought about a change which may require the approval of the Attorney General.

*Irreparable Injury*

It is clear that the second prerequisite to the granting of a preliminary injunction, a showing that plaintiffs will suffer irreparable injury unless the injunction issues, is satisfied in this case. The further implementation of the requirement that plaintiff Huffman, the probate judge of Bullock County, pay personnel costs of his office that have been previously paid by the Bullock County Commission will obviously place an immediate economic burden on the probate judge. If, on the other hand, the probate judge is required to decrease his office staff because he is unable to pay his office employees, the people of Bullock County, including plaintiff Jordan, may be irreparably harmed by the consequent decrease in service that would possibly result in the probate judge's office.

*Relative Injury from Granting or Denying Injunction*

Likewise, the Court is satisfied that the third prerequisite to the granting of a preliminary injunction, proof that the threat-

ened injury to the plaintiffs outweighs whatever damage the proposed injunction may cause the opposing party, is present here. This is particularly true when the serious nature of the threatened injury to the plaintiffs is weighed against the minimal damage, if any, that would befall the Bullock County Commission in temporarily continuing the practice that has been in effect for over twenty years of paying the personnel costs of the probate judge's office.

*Public Interest*

Finally, the Court finds that the fourth prerequisite, a showing that the injunction, if it is issued, would not be adverse to the public interest, is met since it is clearly in the interest of the citizens of Bullock County to maintain the efficient operation of the probate judge's office pending the final resolution of this controversy.

In light of the above considerations that must be taken into account in resolving the question of whether a preliminary injunction should be issued, see, *Compact Van Equipment Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978), the Court is of the opinion that plaintiff's motion for the issuance of a preliminary injunction enjoining defendants from further implementing the change in the practice of compensating the probate judge's staff out of the funds of the Bullock County Commission is due to be granted. It is suggested that this matter be submitted to the United States Department of Justice pursuant to 42 U.S.C. Sec. 1973c prior to a final hearing in this cause.

An order will be entered in accordance with this memorandum opinion.